## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **YVETTE SANDERS, Individually** | § | |
| **and on Behalf of the Class,** | § | |
| | § | **CAUSE NO. _____** |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **MONSTER WORLDWIDE, INC.** | § | |
| **D/B/A ACADEMIC ADVISORS,** | § | |
| | § | |
| *Defendant.* | § | |

## CLASS ACTION COMPLAINT FOR DAMAGES, STATUTORY PENALTIES, AND INJUNCTIVE RELIEF

The Complaint of Plaintiff, YVETTE SANDERS, domiciled in the Southern District of Texas, on behalf of all others similarly situated, respectfully represents the following:

### NATURE OF THE CASE

1.

This suit asserts allegations that Defendant MONSTER WORLDWIDE, INC. D/B/A ACADEMIC ADVISORS ("Monster") violated the Telephone Consumer Protection Act (47 U.S.C. § 227) (TCPA), and other legal prohibitions under statutory and common law, by placing illegal calls to persons who did not give their express consent on their cellular telephones using an

artificial/prerecorded voice ("robo-call") and/or an automatic telephone dialing system.

2.

In particular, Defendant placed thousands of phone calls using an artificial/prerecorded voice and/or an automatic telephone dialing equipment to cellular phone subscribers without their prior express consent. The placing of phone calls to cellular phone lines using an automatic telephone dialing equipment or an artificial or prerecorded voice without the recipients' consent violates 47 U.S.C. § 227(b)(1)(A).

3.

This suit is brought on behalf of all recipients of telephone calls sent or placed by Monster, or its representative(s) to the recipients' cellular telephones using an artificial or prerecorded voice and/or an automatic telephone dialing system within the past four years, and who never provided their number to Monster or otherwise gave their prior express consent.

4.

Plaintiff, on behalf of herself and a class of similarly situated persons or legal entities, brings this suit under the TCPA, other statutes, and common law for injunctive relief and an award of compensatory and statutory damages, together with costs, reasonable attorneys' fees, and pre-judgment interest.

## JURISDICTION AND VENUE

5.

This Honorable Court is vested with jurisdiction over this action under the Telephone Consumer Protection Act of 1991 (47 U.S.C. § 227) ("TCPA" or "Act"). The TCPA expressly creates a private right of action for damages and injunctive relief by a person who suffers a violation of the statute, and jurisdiction to federal district courts to consider and decide such cases or controversies. 47 U.S.C. § 227(b)(3).

6.

In addition, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action. Further, venue is proper in this court pursuant to 28 U.S.C. §1391(b)(2) in that the events giving rise to this claim occurred within the Southern District of Texas.

## DESCRIPTION OF THE PARTIES

7.

Plaintiff party is:

YVETTE SANDERS, a major individual domiciled within the Southern

District of Texas.  Plaintiff received at least one telephone call from Monster on her cellular telephone within the last four years without providing her number to Monster or giving her prior express consent.  The most recent call was received by plaintiff during November 2013 from phone number 214-646-1283, a number subscribed to by Monster.

8.

Defendant party is:

MONSTER   WORLDWIDE,   INC.   D/B/A   ACADEMIC   ADVISORS ("Monster"), a foreign corporation headquartered in New York with its principal place of business located at 5026-D Campbell Blvd., Baltimore, Maryland 21236. Monster transacts business in the State of Texas and operates a number of websites advertising   for-profit   colleges   and   educational   programs,   including www.academicadvisors.com,   www.education.org,   and   www.edu1.org,   among others, all of which are part of the "Monster Learning Network."  All of the subject phone calls received by Sanders and the other members of the class were placed by or at the direction of Monster.

4

## FACTUAL ALLEGATIONS

**A.**      **General Overview of the TCPA**

9.

In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA), in response to a growing number of consumer complaints regarding certain telemarketing practices.

10.

The TCPA regulates, among other things, the use of automated telephone dialing systems, or "autodialers." The plain language of sections 227(a)(1) defines an autodialer as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.   Further, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless phone number in the absence of an emergency or the prior express consent of the called party.   In addition, the use of an automated or prerecorded voice to make such a call is similarly illegal.

11.

According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the

TCPA, such calls are prohibited because, as Congress found, automated or prerecorded calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

12.

Equipment that has the capacity to "store or produce telephone numbers to be called, using a random or sequential number generator," is sufficient to satisfy the statutory definition of an automatic telephone dialing system ("ATDS"), even if that capacity is not used. To require actual use of the equipment's capacity to store or produce numbers using a random or sequential generator would render the phrase "which has the capacity"' mere surplusage. Congress included a definition that provides that the equipment need only have *the capacity* to store or produce numbers. Therefore, the plain text of the statute requires only the "capacity" for such random or sequential generation. Accordingly, a system need not actually store, produce or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it to meet the definitions of ATDS.

6

13.

Thus, telephone calls made to wireless phone numbers placed using equipment with the capacity to meet the definition of an ATDS are expressly prohibited in the absence of the prior express consent of the subscriber.

14.

On January 4, 2008, the FCC released a Declaratory Ruling relating to debt collection calls wherein it confirmed that auto-dialed and prerecorded message calls to a wireless number are permitted *only* if the calls are made with the "prior express consent" of the called party.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).  The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."  Id. at 564-65 (¶ 10).

15.

Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Monster to demonstrate that Plaintiff provided express consent within the meaning of the statute.

**B.**     **Placing and Receipt of the Calls**

16.

At all relevant times Plaintiff was an individual residing in the State of Texas. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(32).

17.

Although Plaintiff did not provide her cellular phone number to Defendant at any time in any way, Defendant contacted Plaintiff on her cellular telephone.  The most recent call was received by Plaintiff on her cellular phone during November 2013.  The call was placed by Defendant from phone number 214-646-1283, a phone number subscribed to by Monster and/or its subsidiary company, Academic Advisors.

18.

All telephone calls made by Defendant to Plaintiff on her cellular telephone occurred with the use of an ATDS, as defined by 47 U.S.C. § 227(a)(1), and/or artificial or prerecorded voice, and all calls included in this suit occurred within four years of the filing of this Complaint.

19.

The telephone number that Defendant used to contact Plaintiff, made by an

ATDS and/or using an artificial or prerecorded voice, was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

20.

The subject telephone calls were not made for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

21.

Plaintiff did not provide Defendant her "express consent" to place telephone calls to her cellular phone using an ATDS, as defined by 47 U.S.C. § 227(b)(1)(A), or an artificial or prerecorded voice.

22.

Identical telephone calls made by an ATDS were similarly placed on repeated occasions to other cellular phone numbers belonging to the other members of the class over the past four years.  None of those subscribers gave Defendant their prior express consent to receive the calls and they were not made for emergency purposes.  In many instances, Defendant, or its representative, placed these phone calls multiple times a week to the members of the Class.

23.

Upon information and belief, Defendant placed numerous calls to Plaintiff and the class members weekly.  As a result, thousands of telephone calls were

placed by Defendant on a weekly basis to the class members, resulting in thousands of calls made by Defendant to the Plaintiff and the class members over the past four years. These telephone calls were placed for the commercial purpose of soliciting applications to for-profit colleges and educational programs.

24.

The phone calls sent to the thousands of cellular telephone numbers subscribed to by the class members over the past four years caused each class member to sustain actual damages including costs associated with loss of use of their cellular phones, interruption of other usage of the cellular phones, nuisance, annoyance, invasion of privacy, additional costs incurred when the number of calls in a given month exceeds the cell phone data plan and/or the costs of minutes associated with the cell phone plan.

## **CLASS ALLEGATIONS**

25.

Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b) on behalf of herself and the following class ("The Class"): All persons or legal entities domiciled within the United States who, within the last four years, received a non-emergency telephone call on their cellular telephone (or to a telephone number assigned to a service for which the called party is charged for the call)

placed by or on behalf of Monster Worldwide, Inc. d/b/a Academic Advisors with an automatic telephone dialing system and/or artificial or prerecorded voice. Excluded from the Class are all judges and Court personnel employed by the United States District Court for the Southern District of Texas and all officers, directors and employees of Defendant.

26.

The Class consists of thousands of individuals and legal entities who are geographically dispensed making joinder impractical, in satisfaction of Federal Rule of Civil Procedure 23(a)(1). The exact size of the respective classes and identities of the individual members thereof are ascertainable through Defendant's records, or the records of its representatives, including but not limited to the transmission logs.

27.

The claims of Plaintiff are typical of the claims of the class members. The claims of the Plaintiff and the respective class members are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiff and the class members.

28.

The class members have a well-defined community of interest. The

11

Defendant acted and failed to act on grounds generally applicable to the Plaintiff and the respective class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the respective class members.

29.

There are numerous questions of law and fact common to the claims of Plaintiff and the class, and those questions predominate over any questions that may affect only individual class members within the meaning of Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).

30.

Absent a class action, most of the respective class members would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

31.

Common questions of fact and law affecting members of the Class include, but are not limited to, the following:

    (a)    Whether Defendant's conduct violates 47 U.S.C. § 227(b)(1)(A);

(b)     Whether Defendant's phone calls were made for an emergency purpose;

(c)     Whether Defendant obtained the phone call recipients' prior express consent;

(d)     Whether Plaintiff and members of the Class are entitled to damages, costs and/or attorney's fees from Defendants;

(e)     Whether Defendant converted and/or caused loss of use of plaintiffs' property;

(f)     Whether Defendant owed any duty to plaintiffs;

(g)     Whether Defendant breached any duty owed to plaintiffs;

(h)     Whether Defendant violated the privacy rights of plaintiffs;

(i)     Whether Defendant's breach of duty caused plaintiffs' compensatory damages;

(j)     Whether Plaintiff and members of the Class are entitled to damages, costs and/or attorney's fees from Defendant;

(k)     Whether Defendant's conduct constituted a nuisance;

(l)     Whether Defendant's conduct caused plaintiffs inconvenience and/or annoyance;

(m)     Whether plaintiffs and members of the class are entitled to compensatory damages;

(n)     Whether Plaintiff and members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct; and

(o)     Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining defendant from continuing to engage in its unlawful conduct.

32.

Plaintiff will fairly and adequately represent and protect the interests of the respective class members.   Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.   Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the respective class members, and have the financial resources to do so.   Neither Plaintiff nor her counsel has any interest adverse to those of the respective class members.

33.

This action is brought and may properly be maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23(b). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these statutory provisions and the jurisprudence of the courts.

## COUNT I - LIABILITY PURSUANT TO THE TCPA

34.

Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

35.

Defendant placed, or caused to be placed, calls to Plaintiff and the Class with an automatic telephone dialing system and/or artificial or prerecorded voice, within the meaning of 47 U.S.C. § 227(a).  The equipment used by Defendants had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.  By using such equipment, Defendant, or its agent, was capable of making thousands of calls to the subscribers of cellular phone numbers automatically without human intervention.

36.

These calls were made *en masse* without the prior express consent of Plaintiff and the other members of the Class.

37.

Thus, Defendant violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), which makes it "unlawful for any person within the United States...to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice...to any telephone number assigned to a...cellular telephone."

38.

Plaintiff received, in November 2013, a call transmitted and/or placed by or on behalf of Monster on her cellular telephone from phone number 214-646-1283.

39.

Defendant's records will likely reveal that Plaintiff received many more calls from Defendant during the past four years.

40.

All of the calls made by Monster, or made on its behalf, to Plaintiff were made despite that Plaintiff never gave Monster her express consent to receive the calls.

41.

All of these calls were sent without Plaintiff's prior express consent and in violation of 47 U.S.C. § 227 *et seq*.

42.

All of the calls were received by Plaintiff on her cellular telephone.  The costs for services for the cellular telephone number on which the Plaintiff received the calls are paid by Plaintiff.  Thus, Plaintiff incurs all of the costs associated with the receipt of the calls on that cellular telephone, including cost of service, cost of the cellular telephone, inconvenience, interruption of other usage of the cellular

telephone, and the invasion of privacy.

43.

Plaintiff is entitled to recovery of statutory damages as provided for by 47 U.S.C.A. § 227 *et seq*., specifically including 47 U.S.C. 227(b)(3)(A).

44.

Pursuant to 47 U.S.C. § 227(b)(3), a person or entity may bring a private action to recover for actual monetary loss from a violation of the TCPA, or to receive $500 in damages for each such violation, whichever is greater.

45.

Accordingly, as a proximate result of the Defendant's conduct, the plaintiff Class has incurred actual damages associated with the cost of the receipt of the phone calls, usage of cellular phone minutes and plan allowances, inconvenience, and the invasion of the recipient's privacy.

46.

Further, in the alternative, the plaintiff Class is entitled to recover statutory damages under the Act, as set forth above, based on the placing of the phone calls by Defendant.

47.

In addition, if the court finds that the Defendants willfully or knowingly

violated the TCPA, the Court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under 47 U.S.C. § 227(b)(3).

48.

Additionally, the Class seeks injunctive relief requiring that Defendant be enjoined from placing or transmitting additional phone calls in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(A).

## COUNT II - CONVERSION

49.

Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

50.

By sending Plaintiff and the class members unsolicited phone calls, Defendant deprived plaintiffs and class members of the use of, and converted to their own use, the cellular telephones belonging to plaintiff and the class members.

51.

Immediately prior to the placing of the unsolicited calls, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the cellular telephone.

52.

By sending the unsolicited calls, Defendant appropriated to its own use, and deprived plaintiff and the class members of the use of, the cellular telephones used to receive the calls, such that they could not be used for the receipt of any other data or calls.  Such appropriation was wrongful and without authorization.

53.

Defendant knew or should have known that such appropriation of the cellular telephones was wrongful and without authorization.

54.

Plaintiff and the class members were deprived of their cellular telephones, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited calls.

55.

Defendant should be enjoined from committing similar violations in the future.

## **COUNT III - NEGLIGENCE**

56.

Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

57.

Among other duties, Defendant owed a duty not to damage plaintiffs. However, Defendant and/or their agents, by error and neglect, permitted, suffered, required, ratified, directed, and/or otherwise proximately caused the acts and omissions that have damaged plaintiffs as referenced herein.

58.

If the Defendant and/or its agents had not been negligent in their acts or omissions, or their supervision, management, direction, instruction, training, guidance, assistance, and/or control of each other, their agents, or themselves, then the marketing practices and/or phone calls referenced herein would have comported with all applicable law, and none of the inherently injurious calls referenced herein would have been transmitted to the telephonic devices of plaintiffs.

59.

In this regard, by transmitting the unsolicited calls to plaintiffs, the defendant violated its duty or duties to plaintiffs.

60.

For such reasons and/or otherwise as a consequence of Defendant's negligence proximately causing injuries to plaintiffs and/or their property,

plaintiffs are entitled to recover from defendant the actual or compensatory damages referenced herein and in accord with proof.

61.

Defendant should be enjoined from committing similar violations in the future.

## COUNT IV - INVASION OF PRIVACY

62.

Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

63.

Defendant, by its acts and omissions described herein, has invaded plaintiff and the class members' privacy and/or committed an unauthorized intrusion for prying into plaintiff and the class members' seclusion.

64.

The invasion of privacy and/or intrusion committed by the defendant has been highly offensive and/or objectionable to plaintiff and the class members.

65.

The invasion of privacy and/or intrusion committed by the defendant would be highly offensive and/or objectionable to any reasonable person.

66.

Defendant invaded and/or intruded on the privacy and/or private matters of plaintiff and the class members.

67.

The invasions of privacy and/or intrusion committed by Defendant have caused plaintiff and the class members anguish and suffering, as well as additional damages as described herein.

## COUNT V - PRIVATE NUISANCE

68.

Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

69.

Defendant, by its acts and omissions described herein, has invaded the plaintiff and the class members' interest in the use and enjoyment of their property.

70.

Defendant's invasions have been substantial, negligent and unreasonable, and have constituted a nuisance with respect to plaintiff and the class members.

71.

Defendant's invasions would constitute a nuisance with respect to any

reasonable person.

### 72.

Defendant's invasions have made life uncomfortable for plaintiff and the class members, and have caused plaintiff and the class members actual damages as described herein.

## COUNT VI - PUBLIC NUISANCE

### 73.

Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

### 74.

Plaintiff, the class members, and the rest of the public, have a right to be free from the inconvenience and annoyance of unsolicited calls placed to their cellular telephones.

### 75.

Defendant, by its acts and omissions as described herein, has substantially and unreasonably interfered with these rights.

### 76.

Defendant, by its acts and omissions as described herein, has proximately

caused plaintiff and the class members, in particular, actual damages as described herein.

## **DEMAND FOR PRESERVATION**

77.

Plaintiff also specifically demands that Defendant retain and preserve all records related to the allegations in this Complaint.   Specifically, Plaintiff's demand for preservation includes, but is not limited to, the following documents and information:

(1)    Scripts of messages to be used for telephone calls placed over the past four (4) years, with corresponding dates when those messages were used;

(2)    Recordings of all messages placed over the past four (4) years, with corresponding dates when those messages were used;

(3)    Any and all training materials used for persons making calls in the past four (4) years, with corresponding dates when those training materials were used;

(4)    List of all phone numbers to which calls were sent within the last four years;

(5)    List of all persons or phone numbers who requested to opt-out of receiving telephone calls over the past four years;

(6)    Any and all documents, including but not limited to invoices, transmission logs, or summary logs, provided to you by any company or person you retained to transmit telephone calls on your behalf;

(7)    Any proof Defendant contends shows that it obtained the prior express consent of any recipient of the telephone calls, including the Plaintiff;

(8)     Any and all transmission or phone logs showing dates of transmission, receipt or identity of recipient of telephone calls sent by Defendant or on its behalf within the last four years;

(9)      Copies of any and all policies or procedures implemented by Defendant with regard to the transmission of telephone calls, as well as marketing activities and restrictions;

(10)    Documents related to Defendant's cost for transmitting the telephone calls placed by Defendant or on its behalf within the last four years;

(11)    The equipment used to place the subject calls, whether in your possession or the possession of another party; and

(12)    Demand is made on Defendant to notify any third parties or vendors retained by it to place telephone calls of this preservation demand and request production of any documents requested through this demand.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, on behalf of herself and as representative of all other persons similarly situated, prays for judgment against the defendants, as follows:

(1)     An Order certifying the Class under the appropriate provisions of F.R.C.P. 23 and appointing the plaintiff and his counsel to represent the class;

(2)     For compensatory damages as alleged herein;

(3)     For statutory penalties as provided for under 47 U.S.C. § 227(b)(3);

(4)     For an injunction restraining Defendant from placing any more telephone calls to cellular telephone without prior express consent using a equipment meeting the definition of an

automatic telephone dialing system;

(5)     For pre-judgment interest from the date of filing this suit;

(6)     For reasonable attorney's fees;

(7)     For all costs of this proceeding; and

(8)     For all general, special, and equitable relief to which the plaintiffs and the members of the class are entitled by law.

## **<u>JURY DEMAND</u>**

Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

Respectfully submitted,

By: /s/ Michael A. Josephson

    MICHAEL A. JOSEPHSON
    Fed. Id. 27157
    State Bar No. 24014780
    Andrew Dunlap
    Fed Id. 1093163
    State Bar No. 24078444
    FIBICH, HAMPTON, LEEBRON,
    BRIGGS & JOSEPHSON, LLP
    1150 Bissonet Street
    Houston, Texas 77005
    Telephone: (713) 751-0025
    Facsimilie: (713) 751-0030
    Email:  mjosephson@fhl-law.com

     -and-

    JOHN P. WOLFF, III (State Bar #00793161)
    CHRISTOPHER K. JONES (*pro hac to be filed*)
    KEOGH, COX & WILSON, LTD.
    701 Main Street
    Baton Rouge, Louisiana  70802
    Telephone:  (225) 383-3796
    Facsimile: (225) 343-9612
    Email:  jwolff@kcwlaw.com
    Email: cjones@kcwlaw.com

    -and-

    PHILIP BOHRER (Fed. Id. 356937)
    SCOTT E. BRADY (*pro hac to be filed*)
    BOHRER LAW FIRM, L.L.C.
    8712 Jefferson Highway, Suite B
    Baton Rouge, Louisiana 70809
    Telephone: (225) 925-5297
    Email:  phil@bohrerlaw.com
    Email:  scott@bohrerlaw.com